**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GLOBAL MILITARY PRODUCTS, INC.

Plaintiff,

vs. Case No. 8:25-cv-02731-JLB-CPT

TRIPWIRE SOUTH LLC, and RYAN MORRIS,

Defendants.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT RYAN MORRIS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Plaintiff, Global Military Products ("GMP") opposes Defendant, Ryan Morris' Motion to Dismiss the Complaint ("Motion"). As alleged in GMP's Complaint (Doc. No. 1), Mr. Morris' tortious conduct and fraudulent statements directed at a company headquartered in Florida provides the necessary minimum contacts to provide this Court with personal jurisdiction.

## I. INTRODUCTION

In its Complaint, GMP detailed how Mr. Morris committed multiple intentional torts directed at a company Mr. Morris knew was located in Florida. GMP has pled the who, what, where, and when of Mr. Morris' fraudulent representations. Mr. Morris wants to sidestep responsibility for these actions through a series of jurisdictional arguments. But each argument fails.

First, Mr. Morris argues that the Court lacks personal jurisdiction because Florida's long-arm statute does not extend to him as a non-resident. But this ignores long-standing Florida precedent that Florida's long-arm statute extends to a non-resident defendant alleged to have made fraudulent misrepresentations directed into Florida—the exact situation GMP alleges here. *See, e.g., Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002).

Second, Mr. Morris argues that due process would be offended by a Florida court having jurisdiction over his actions. Mr. Morris' argument again skips over many cases that confirm that commission of an intentional tort alone can provide sufficient minimum contacts to convey personal jurisdiction. *See, e.g.*, *Exhibit Icons, LLC v. XP Comps., LLC*, 609 F. Supp. 2d 1282, 1298 (S.D. Fla. 2009).

Third, Mr. Morris asserts as an alternative argument that his status as a corporate officer protects him from this lawsuit. For example, he alleges that Florida's Corporate Shield Doctrine blocks GMP's claims. But this doctrine offers no protection to corporate officers alleged to have committed intentional torts—as is the case here. *See, e.g.*, *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1344 (11th Cir. 2013) ("Importantly, however, under Florida law, this corporate shield doctrine is inapplicable where the corporate officer commits intentional torts."). Indeed, Florida has confirmed that "individual officers [like Mr. Morris] are personally liable for torts they commit, even if those torts arise from acts performed within the scope of their employment." *Exhibit Icons*, 609 F. Supp. 2d

at 1299 (citing *Fla. Specialty, Inc. v. H 2 Ology, Inc.*, 742 So. 2d 523, 527–28 (Fla. 1st DCA 1999)).

Fourth, Mr. Morris argues that GMP failed to plead three of its counts with the heightened level of particularly required for fraud claims. To begin, GMP's Unjust Enrichment count is not based in fraud and therefore not subject to the heightened pleading standard. Moreover, GMP's two counts that are based in fraud describe in detail the who, what, where, and when of the alleged fraud—all that is necessary to meet the heightened standard.

## II. RELEVANT FACTUAL ALLEGATIONS

In 2024, GMP sought out to obtain TNT in accordance with certain military specifications. (Doc. 1 ¶¶ 1, 18, 22, 24). To this end, GMP engaged in discussions with Mr. Morris—the founder and President of Tripwire. (*Id.* ¶¶ 12, 18; Declaration of Jeffrey Brunozzi ("Brunozzi Dec.") ¶¶ 3–4). In May 2024, Mr. Morris traveled to Florida and engaged in discussions about supplying TNT with GMP employees including GMP employeesBill Allen and Conan Higgins. (Brunozzi Dec. ¶ 10). In September 2024, Mr. Morris conducted additional negotiations with GMP through messaging services, email, and telephone with GMP employees including John Summers and Joe Miozzi. (*See* Brunozzi Dec. ¶ 12). At that time, Mr. Morris knew that GMP was a Florida company based in part on these discussions, his trip to

Florida, and the fact that GMP's address was included in multiple series of correspondence. (Brunozzi Dec. ¶ 5).

As part of these discussions from early May 2024 through October 2024, Mr. Morris represented to GMP that Tripwire could supply the requisite TNT on GMP's strict delivery schedule. (*Id.* ¶¶ 6, 8, 10; *see* Doc. No. 1 ¶ 18, 22). Mr. Morris knew his representation was false when made. (Doc. No. 1 ¶¶ 82, 91). Even so, on September 12, 2024, GMP relied on Mr. Morris' false representations and entered into an agreement with Tripwire. (*Id.* ¶ 22).

After entering into the initial agreement, Mr. Morris made this representation between September 12, 2024 and September 19, 2024. (*See id.*). Mr. Morris further represented to GMP that GMP needed to pay substantial deposits to Tripwire to facilitate the acquisition of the TNT from Tripwire's Vietnamese source. (*Id.* ¶¶ 23–25). Again Mr. Morris knew his representation was false when made, and again GMP relied on Mr. Morris' representation. (*Id.* ¶¶ 82, 91). On September 19, 2024, GMP paid Tripwire a $2,025,000.00 deposit. (*Id.* ¶ 25). On September 30, 2024, GMP paid Tripwire another $10,125,000.000 deposit. (*Id.* ¶ 75).

Still under the belief that Tripwire could and would supply the requisite TNT, GMP amended the initial agreement to increase the quantity of TNT to be supplied. (*Id.* ¶ 26). The parties entered into the agreement on October 31, 2024. (*Id.*). Mr. Morris personally signed the agreement. (*Id.* ¶ 27). Under its terms, Tripwire agreed to deliver 20,000,000 kilograms of TNT to GMP over 18 months,

and GMP agreed to pay Tripwire $11 per kilogram of TNT. (*Id.* ¶¶ 28–29). GMP also agreed to make another deposit equal to 15% of the first 6,000,000 kilograms of TNT within 30 days. (*Id.* ¶ 39).

Tripwire failed to deliver the first three shipments of TNT to GMP. (*Id.* ¶¶ 42–45). On February 28, 2025, a few days after the third shipment was due, Mr. Morris represented that GMP could send an End User Certificate to Tripwire's subcontractor, and TNT shipments would begin. (*Id.* ¶ 49 ("[S]end an [End User Certificate] direct to Astor [Tripwire's subcontractor] so there is no delay and we can get this moving.")). GMP complied. (*Id.* ¶ 50). On March 11, 2025, Mr. Morris represented that the TNT was ready and GMP should book a ship to transport the TNT from Vietnam. (*Id.* ¶¶ 53–54 ("All documents will be received this week" and "the ship can now be booked.")). GMP booked a ship, which required a $875,222.38 non-refundable deposit. (*Id.* ¶¶ 54–55). Once again, Mr. Morris knew his representations were false when made. (*Id.* ¶¶ 82, 91). Tripwire revealed that the TNT was not ready after the ship arrived in Vietnam, and GMP lost its non-refundable deposit. (*Id.* ¶ 56–57).

Despite numerous representations from Mr. Morris that Tripwire would be able to deliver 20,000,000 kilograms of TNT on the strict delivery schedule, GMP never received a single kilogram of TNT, and still has not to this date. (Brunozzi Dec. ¶¶ 28-29).

## III. MEMORANDUM OF LAW

### A. This Court has Personal Jurisdiction Over Mr. Morris.

#### 1. Legal Standard

The plaintiff has the initial burden to show a prima facie case of personal jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). If the defendant submits affidavits contradicting the complaint's allegations, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction. *Id*. Where the complaint and supporting affidavits and documents conflict with the Defendants' affidavits, the Court must construe all reasonable inferences in the plaintiff's favor. *Id.*

#### 2. GMP Plead Sufficient Facts to Establish Personal Jurisdiction.

This Court has personal jurisdiction over Mr. Morris. To assess personal jurisdiction, the Court must conduct a two-step analysis. *See, e.g.*, *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the Court determines whether the complaint alleges sufficient facts to bring the defendant within the reach of Florida's long-arm statute. *Id*. Second, the Court asks whether plaintiff's assertion of jurisdiction comports with due process and traditional notions of fair play and substantial justice. *Id*. GMP's Complaint satisfies both tests.

First, GMP has pled sufficient facts to show that Mr. Morris' conduct subjects him to Florida's long-arm statute. Florida's long-arm statute extends this

Court's personal jurisdiction over non-resident defendants that have committed a tortious act within the state. Fla. Stat. § 48.193(1)(a)(2). Courts have consistently interpreted this statute to encompass fraudulent acts committed outside the state but directed at individuals within Florida. *See, e.g.*, *Exhibit Icons*, 609 F. Supp. 2d at 1297 ("Fraud in the inducement and negligent misrepresentation are torts that can establish personal jurisdiction."); *see also Wendt*, 822 So. 2d at 1260 (finding long-arm jurisdiction over out-of-state defendant alleged to have made "telephonic, electronic, or written communications into Florida" and the cause of action arose from those communications); *Machtinger v. Inertial Airline Servs., Inc.*, 937 So.2d 730, 735 (Fla. 3d DCA 2006) (finding fraudulent misrepresentations made from outside Florida and directed into Florida by phone, fax, and writings constitute tortious acts committed within Florida under Florida's long-arm statute).

The same logic applies here. As alleged in GMP's Complaint, Mr. Morris made false representations to GMP regarding Tripwire's ability to deliver the quantities of TNT that GMP needed; the need for substantial downpayments; and the need for transportation for imminent deliveries. (*See* Doc. 1 ¶¶ 23, 24, 49, 53, 81, 84, 86, 90, 93, 95). In other words, Mr. Morris directed fraudulent statements into Florida—the same conduct that triggered the Florida long-arm statute in *Exhibit Icons* and *Wendt*. And just as in *Exhibit Icons* and *Wendt*, this Court should find that the same Florida long-arm statute encompasses Mr. Morris' tortious actions.

Mr. Morris' Motion to Dismiss overlooks these allegations when it asserts that "GMP does not allege Mr. Morris personally committed any tort in Florida or directed toward Florida residents." (Doc. No. 24 at 5.) This incorrect statement serves as the foundation for Mr. Morris' personal jurisdiction argument. But as detailed above, GMP in fact does allege that Mr. Morris perpetrated multiple torts (fraud and fraud in the inducement) directed at a Florida resident (GMP) when he fraudulently convinced GMP to enter into the contract with Tripwire for TNT that Mr. Morris knew Tripwire could not acquire and when he directed GMP to arrange transportation for a shipment of TNT that did not exist. (*See* Doc. No. 1 ¶¶ 23, 24, 49, 53, 81, 84, 86, 90, 93, 95). As a result, Mr. Morris' entire argument crumbles. Because Mr. Morris directed tortious actions into Florida, the Florida long-arm statute encompasses his conduct.

Second, exercising personal jurisdiction would comport with the requirements of due process and traditional notions of fair play and substantial justice. This second step requires its own two-step analysis to determine whether (1) the defendant has sufficient "minimum contacts" with Florida and (2) exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Sculptchair*, 94 F.3d at 626. Again, Mr. Morris' committing an intentional tort aimed at a Florida resident alone satisfies both prongs.

To establish minimum contacts, the Court must consider if the defendant's contacts with Florida relate to the plaintiff's cause of action, involve some purposeful availment of the privilege of conducting activities within the forum, and

are such that he should reasonably anticipate being haled into court there. *Id.* at 631. The "minimum contacts" requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum state, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). "When an intentional tort is alleged, personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum." *Exhibit Icons*, 609 F. Supp. 2d at 1298 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)); *see also Licciardello*, 544 F.3d at 1286–88 (explaining that the "effects" test provides for the exercise of personal jurisdiction over non-resident defendants who commit an intentional tort aimed at the forum state that causes foreseeable harm in the forum state). Mr. Morris' alleged conduct falls within this rubric: GMP alleged he committed two intentional torts (fraud and fraud in the inducement) aimed at the forum state (a company headquartered in Florida) that caused harm to that company. Thus, the minimum contacts requirement is satisfied.

To determine whether jurisdiction would offend the notion of fairness, the Court must assess "the burden on the defendant, the interests of the forum . . . , and the plaintiff's interest in obtaining relief." *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)). In similar cases, courts have found that exercising personal jurisdiction over individual corporate officers personally accused of tortious conduct would not be burdensome because "[g]iven [his] role with the corporate defendants, [he] will have a significant role in their

defense . . . will undoubtedly be a witness at trial and thus will not be unduly burdened by answering the claims against him in Florida." *Exhibit Icons*, 609 F. Supp. 2d at 1299. The same reasoning supports finding that Mr. Morris would not be unduly burdened by answering the claims against him in Florida. He will have a significant role in Tripwire's defense and will undoubtedly be a witness a trial. Furthermore, Florida has a strong interest in "affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardo*, 544 F.3d at 1288. Thus, exercising jurisdiction over Mr. Morris comports with the traditional notions of fair play.

Having established a prima facia case for jurisdiction, the burden shifts to Mr. Morris to offer evidence that jurisdiction is improper. Mr. Morris has failed to carry his burden with affidavits or evidence that offers anything except "conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs*, 447 F.3d at 1360. For example, to counter GMP's allegations that Mr. Morris made fraudulent misrepresentations to GMP, which amounted to fraud and fraud in the inducement, (*see* Doc. 1 ¶¶ 23, 24, 49, 53, 81, 84, 86, 90, 93, 95), Mr. Morris states "I have not committed any tortious act in Florida, nor have I intentionally directed any conduct toward Florida residents that would subject me personally to the jurisdiction of Florida courts." (Doc. 24-1, ¶ 10). That is a "conclusory assertion" that the Court need not accept. *See Stubbs*, 447 F.3d at 1360.

Even looking beyond their conclusory nature, Mr. Morris' statements still fall short of carrying his burden. Despite concluding that he engaged in no tortious

conduct, Mr. Morris does not deny engaging in the underlying conduct that GMP asserts constituted the tortious behavior. In fact, Mr. Morris acknowledges that he performed the acts, but qualifies that they were performed in his "corporate capacity." (*See* Doc. No. 24-1, ¶ 12 ("To the extent the Complaint references 'Tripwire, through Morris,' those references relate exclusively to acts I performed in my corporate capacity.")). But this qualification cannot save him. As noted below, performing tortious acts in a corporate capacity does not defeat jurisdiction. (*See* Section III.A.3-4, *infra*).

Mr. Morris' conclusory assertions stand in contrast to other defendants' affidavits that have successfully led to dismissals for lack of personal jurisdiction. In *White*, the defendants rebutted each of the factual allegations tying them to the alleged intentional torts:

> Similarly, the three corporate officers stated under oath in their affidavits that they had no role in broadcasting, distributing, or licensing the episode at issue and none of them had any contacts such as work, residence, business ownership, property, or financial accounts in Florida. These defendants' affidavits supported their arguments in the motions to dismiss that they did not publish the episode and thus did not commit the tort of defamation in Florida.

*White v. Discovery Commc'ns, LLC*, 365 So. 3d 379, 383 (Fla. 1st DCA 2023). In contrast, Mr. Morris' affidavit admits to the underlying acts that GMP alleges constitute intentional torts.

Even if the Court accepts Mr. Morris' statements as sufficient to carry his burden, Mr. Morris' statement still is not enough. GMP has now come forward with

sworn statements confirming Mr. Morris' tortious actions and contradicting much of Mr. Morris' affidavit.

In Dr. Brunozzi's declaration, he asserts that Mr. Morris did travel to Florida to discuss the possibility of Tripwire supplying GMP with TNT. (Brunozzi Dec. at ¶¶ 9-10). This directly conflicts with Mr. Morris' statements that "[a]ll communications with [GMP] were conducted remotely via email, phone or videoconference while [Mr. Morris] was outside Florida," (Morris Decl. ¶ 8), and that "[i]n connection with the transactions referenced in the Complaint, [Mr. Morris] did not personally travel to Florida, negotiate in Florida, or perform any acts or communications directed toward Florida residents other than in my official role for Tripwire." (*Id.* ¶ 7). Dr. Brunozzi also confirms that Mr. Morris communicated with GMP knowing that GMP was a Florida company. (Brunozzi Dec. ¶ 5).

In Mr. Dorn's declaration, he identifies filings with the Florida Secretary of State showing that Mr. Morris set up Tripwire as a Florida limited liability company with a principal place of business in Florida and listed himself (Mr. Ryan J. Morris) as the registered agent. (Declaration of Kevin Dorn ¶ 3 ("Dorn Decl.")). This statement contrasts with Mr. Morris' sworn statement that he has "not personally conducted, operated, or carried on any business in Florida, nor ha[s Mr. Morris] ever registered to do business or paid taxes there." (Morris Decl. ¶ 6). At the same time, Mr. Morris acknowledges that he is the Managing Director of Tripwire. (*Id.* ¶ 3).

Given the conflicting sworn statements and evidence that GMP has brought forward in response, the Court should find that GMP has met its burden. At best, Mr. Morris' statements create a direct conflict between GMP's allegations and sworn statements that Mr. Morris visited Florida, opened a business in Florida, and committed intentional torts directed at a Florida company and Mr. Morris' statement that he did not. In such situation, the Court "must construe all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360.

For these reasons, the Court should find that GMP has adequately alleged personal jurisdiction.

**3. Florida's Corporate Shield Doctrine Does Not Insulate Mr. Morris from the Consequences of His Tortious Actions.**

Mr. Morris also argues that, even if the Court has personal jurisdiction, the Court should still dismiss GMP's claims against him under Florida's Corporate Shield Doctrine. But Mr. Morris' attempt to evade liability is misplaced. Simply put, Florida's Corporate Shield Doctrine does not apply to allegations of fraud. *Mosseri*, 736 F.3d at 1344 ("Importantly, however, under Florida law, this corporate shield doctrine is inapplicable where the corporate officer commits intentional torts."); *Thorpe v. Gelbwaks*, 953 So. 2d 606, 611 (Fla. 5th DCA 2007) ("The corporate shield doctrine does not protect a corporate officer who commits fraudulent or other intentional misconduct, as alleged here."); *see also Wentz v. Project Veritas*, No. 6:17-cv-1164-Orl-18GJK, 2018 WL 11252110, *2 (M.D. Fla. Jan. 31, 2018) (quoting *Thorpe*); *Future Tech. Intern., Inc. v. Tae II Media, Ltd.*,

944 F. Supp. 1538, 1560 n.9 (S.D. Fla. 1996) ("Defendants also suggest that the "corporate shield" doctrine ought to preclude the exercise of jurisdiction over Defendant Park. However, this doctrine is inapplicable to allegations of fraud or other similar misconduct, as is the case here."). Put differently, as noted above, "individual officers [like Mr. Morris] are personally liable for torts they commit, even if those torts arise from acts performed within the scope of their employment." *Exhibit Icons*, 609 F. Supp. 2d at 1299 (citing *Fla. Specialty*, 742 So. 2d at 527–28).

Here, GMP alleges that Mr. Morris committed fraud and fraud in the inducement directed at a Florida company—GMP. GMP alleged that Mr. Morris coaxed GMP to pay substantial deposits to allow Tripwire to obtain TNT from a supplier in Vietnam. (Doc. 1 ¶¶ 23, 24, 81, 84, 90, 93). GMP also alleged that Mr. Morris directed additional fraudulent statements at GMP to induce GMP to incur transportation costs to transport a TNT delivery that Tripwire would never make. (Doc. 1 ¶¶ 49-52, 86, 95). Because both fraud and fraud in the inducement are intentional torts, Florida's Corporate Shield Doctrine does not apply to this case.

The cases that Mr. Morris relies on are inapposite. In both *White* and *LaFreniere*, the court recognizes the intentional tort exception to the Corporate Shield Doctrine but concludes that the complaints at issue failed to adequately plead an intentional tort. In *White*, the plaintiff never submitted sworn evidence to rebut the defendants' sworn statements rebutting in detail the factual allegations supporting the defamation claim. *White*, 365 So. 3d at 383-84. In *LaFreniere*, the

court concluded that "the allegations in the amended complaint do not sufficiently state a cause of action alleging an intentional tort as defined in the workers' compensation statute." *LaFreniere v. Craig-Myers*, 264 So. 3d 232, 240 (Fla. 1st DCA 2018). Neither scenario matches this case.

Unlike *White*, Mr. Morris has offered only conclusory statements to rebut the Complaint and, even then, GMP has come forward with additional sworn evidence supporting their Complaint allegations and rebutting Mr. Morris' statements. (*See generally* Brunozzi Dec.). And unlike *LaFreniere*, GMP has sufficiently stated a cause of action alleging both fraud and fraud in the inducement. (*See* Doc. 1 ¶¶ 80–97). Thus, Mr. Morris' attempts to hide behind the corporate shield doctrine fails.

For these reasons, the Court should not dismiss any claims against Mr. Morris based on Florida's Corporate Shield Doctrine.

### 4. The Complaint Establishes that Mr. Morris is Personally Liable for His Tortious Actions.

Mr. Morris also argues that GMP cannot hold him personally responsible for the alleged conduct because "the Complaint does not allege any factual or legal basis for holding him personally liable for Tripwire's conduct." (Doc. No. 24 at 10). This is beside the point. GMP wants to hold Mr. Morris personally liable for Mr. Morris' conduct.

As a matter of law, "individual officers [like Mr. Morris] are personally liable for torts they commit, even if those torts arise from acts performed within the scope of their employment." *Exhibit Icons*, 609 F. Supp. 2d at 1299 (citing *Fla. Specialty*,

742 So.2d at 527–28). Thus, the Court should not dismiss GMP's fraud and fraud in the inducement claims against Mr. Morris.

### B. GMP's Pled Each Count with Adequate Specificity

Mr. Morris also argues that the Court should dismiss Count I (Fraud), Count II (Fraud in the Inducement), and Count IV (Unjust Enrichment) under Rule 12(b)(6) for failing to state each claim with sufficient particularity. Mr. Morris' arguments fail on both the law and the facts.

The plaintiff only needs to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To meet this lenient standard, "a complaint need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Leavitt v. Cole*, 291 F. Supp.2d 1338, 1341 (M.D. Fla. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As an exception to the Court's permissive pleading standards, the Federal Rules of Civil Procedure state that plaintiffs need to plead claims grounded in fraud with specificity. Fed. R. Civ. P. 9(b). But this heightened standard cannot be read in a vacuum. The Court "must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading." *SEC v. Spinosa*, 31 F. Supp. 3d 1371, 1375 (S.D. Fla. 2014); *see also In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 352 (S.D. Fla. 1991).

#### 1. GMP's Count IV (Unjust Enrichment) Need Not Be Pled with Specificity.

Mr. Morris is simply wrong about GMP's Unjust Enrichment count being inadequately pled. GMP pled Count IV (Unjust Enrichment) with sufficient

particularity to meet the FRCP's lenient notice pleading standard. Without explanation, Mr. Morris demands that GMP meet a higher standard. (Doc. No. 24 at 11-13). But, contrary to Morris' unsupported contention, "a claim for unjust enrichment is subject to Rule 9(b) **only** if it is premised on fraud." *Mazzeo v. Nature's Bounty, Inc.*, No. 14–60580–CIV, 2014 WL 5846735, at *1 (S.D. Fla. Nov. 12, 2014) (emphasis added). GMP's Unjust Enrichment claim is not.

Here, GMP's Unjust Enrichment claim is pled as an alternative to the breach of contract claim—unrelated to its fraud counts. (*See* Doc. 1, ¶ 105). GMP's claim makes no reference to Mr. Morris' fraud. (*See generally id.* ¶¶ 105—10). Moreover, GMP's unjust enrichment claim does not depend on proving the retained benefits were obtained by fraud.

Accordingly, GMP has adequately pled Count IV (Unjust Enrichment) and the Court should deny Mr. Morris' motion to dismiss Count IV for lacking specificity that is not required.

### 2. GMP Plead Counts I and II with Adequate Specificity.

Mr. Morris also erroneously argues that GMP's fraud and fraud in the inducement counts lacked sufficient particularity. Although Mr. Morris is correct that these two counts do need to meet Rule 9(b)'s standard, GMP fulfilled that obligation. GMP pled Count I (Fraud) and Count II (Fraud in the Inducement) with sufficient particularity to meet FRCP 9(b)'s heightened pleading standard.

As the cases that Mr. Morris cites underscore, "[c]ourts should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant

has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025). To meet this balance, plaintiff need only "allege facts regarding the 'time, place, and substance of the defendants' alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Chapman v. Abbott Lab'ys*, 930 F. Supp. 2d 1321, 1324 (M.D. Fla. 2013) (quoting *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012)).

For example, in *Steel Media Group, LLC v. Lewis*, the defendants represented to the plaintiff that they could supply Super Bowl tickets, but failed to provide all of the promised tickets. *Steel Media Group, LLC v. Lewis*, No. 1:22-CV-21780-KING/DAMIAN, 2023 WL 1413043, at *8 (S.D. Fla. Jan. 6, 2023). Consequently, the plaintiff sued the defendants for fraud in the inducement. *Id.* The plaintiff alleged that, on a December 17, 2019 phone call, the defendants made representations about their ability to supply the plaintiff with tickets, even though the defendants had no such connections. *Id.* In evaluating these allegations under Rule 9(b), the court found that the plaintiff sufficiently alleged the requisite "who, what, when, where, and how." *Id.*

Here, GMP alleges its claims sounding in fraud with the requisite particularity. *See id.*; *Otto Candies*, 137 F.4th at 1178. Like *Steel Media*, GMP's allegations detailed above meet Rule 9(b)'s pleading standards by sufficiently

alleging the requisite "who, what, when, where, and how" for Count I (Fraud) and Count II (Fraud in the Inducement).

For example, GMP alleges that "Tripwire through Morris made false representations to GMP . . . [that] Tripwire could deliver 20,000,000kg of TNT and . . . meet the delivery schedule." (Doc. 1 ¶ 81, 99). GMP also alleges that "Tripwire [through Morris] told GMP that by paying these deposits, Tripwire would be able to obtain TNT from a supplier in Vietnam." (*Id.* ¶ 24, 81, 99). GMP also asserted that Morris "either knew this statement was false when made or made it with reckless disregard for its truth." (*Id.* ¶¶ 82–83, 91–92). This specific misrepresentation occurred between September 12, 2024 and September 19, 2024. (*See id.* ¶¶ 22, 25).

GMP also alleges that "[o]n February 28, 2025, Mr. Morris instructed GMP to 'send an [End User Certificate] direct to Astor [Tripwire's subcontractor] so there is no delay and we can get this moving.'" (*Id.* ¶ 49). GMP further alleges that "[o]n March 11, 2025, Mr. Morris told GMP that '[a]ll documents will be received this week' and that 'the ship can now be booked." (*Id.* ¶ 53). GMP also alleged that in reliance on Mr. Morris' misrepresentations, Plaintiff "booked a vessel to transport TNT from Vietnam," but "[a]fter the vessel arrived in Vietnam at the agreed upon time, Tripwire revealed that the shipment of TNT was not ready and would not be ready for another 45-60 days." (*Id.* ¶¶ 54, 56). These statements satisfy the "who, what, when, where, and how" requirement of Rule 9(b). Nothing more is required.

For these reasons, the Court should deny Mr. Morris' motion to dismiss Counts I, II, and IV for lacking particularity.

## IV. CONCLUSION

The Court should deny Mr. Morris' Motion to Dismiss, find that the Court has personal jurisdiction over Mr. Morris, and confirm that GMP's Complaint meets the Federal Rules of Civil Procedure's minimum pleading standards.

Respectfully submitted this 26th day of November, 2025.

*<u>/s/ Michael S. Vitale</u>*
Michael S. Vitale
Florida Bar No. 17136
Email: mvitale@bakerlaw.com
Secondary email: ybayala@bakerlaw.com
orlbakerdocket@bakerlaw.com
Daniel D. Woodruff
Florida Bar No. 1059872
Email: dwoodruff@bakerlaw.com
Secondary email:
lshahsailes@bakerlaw.com
orlbakerdocket@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168

Kevin T. Barnett
(admitted pro hac vice)
Email: kbarnett@bakerlaw.com
Kevin Dorn
(admitted pro hac vice)
Email: kdorn@bakerlaw.com
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
Telephone: 202.861.1500

Jenna Solari
(admitted pro hac vice)
Email: jsolari@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309-7676
Telephone: 404.682.2333

*Attorneys for Global Military Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Michael S. Vitale*
Michael S. Vitale