**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GLOBAL MILITARY PRODUCTS, INC.

Plaintiff,

vs. Case No. 8:25-cv-02731-JLB-CPT

TRIPWIRE SOUTH LLC, and RYAN MORRIS,

Defendants.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TRIPWIRE SOUTH LLC'S MOTION TO DISMISS COMPLAINT**

Plaintiff, Global Military Products ("GMP") opposes Defendant, Tripwire South, LLC's Motion to Dismiss the Complaint ("Motion"). In its Complaint (Doc. No. 1), GMP alleges Tripwire's fraudulent, tortious conduct with the specificity and particularity required by Federal Rule of Civil Procedure 9(b).

## I. INTRODUCTION

In its Complaint, GMP detailed multiple fraudulent statements that convinced GMP to enter into a $440 million agreement with Tripwire to supply 40,000,000 kg of TNT on a strict schedule. GMP identified who made these statements (usually Mr. Ryan Morris) and the time period when these statements were made. As a result of these fraudulent statements, GMP paid Tripwire more than $12 million and, to date, has received zero kilograms of TNT. Rather than accept responsibility for these tortious actions, Tripwire moves to dismiss most of

GMP's lawsuit on procedural grounds based on a misapplication of the law or a misunderstanding of the facts.

First, Tripwire argues that the independent tort doctrine bars GMP's two fraud claims. But even the cases cited by Tripwire confirm that the independent tort doctrine does not bar claims "where the fraud alleged pertains to a term of the contract and is relied upon in inducing the completion of the agreement." *Bankers Mut. Cap. Corp. v. U.S. Fid. & Guar. Co.*, 784 So. 2d 485, 488–89 (Fla. 4th DCA 2001). As those are the facts here, Tripwire's attempts to rely on the independent tort doctrine must fail.

Second, Tripwire asks the Court to dismiss GMP's Unjust Enrichment count because it does not comply with Federal Rule of Civil Procedure Rule 9(b)'s heightened pleading standard for claims related to fraud. The only problem is that GMP's Unjust Enrichment count is not related to fraud. Thus, Rule 9(b)'s heightened pleading standard does not apply. Again, because Tripwire has misapplied the law, its motion must fail.

Third, Tripwire argues that GMP's Fraud and Fraud in the Inducement Counts also fail to comply with Rule 9(b)'s pleading standard. Although Tripwire identified the applicable legal standard, its analysis is flawed. GMP satisfies the Rule 9(b) standard by identifying the fraudulent statements with sufficient particularity that Tripwire "has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [GMP] has substantial prediscovery evidence of those facts." *Otto Candies, LLC v. Citigroup*

*Inc.*, 137 F.4th 1158, 1178 (11th Cir. 2025). As a result, Tripwire's challenge to the sufficiency of GMP's pleading also fails.

For these reasons, the Court should deny Tripwire's Motion to Dismiss.

## II. RELEVANT FACTUAL ALLEGATIONS

In 2024, GMP sought out to obtain TNT in accordance with certain military specifications. (Doc. No. 1 ¶¶ 1, 18, 22, 24). To this end, GMP engaged in discussions with Mr. Morris—the founder and President of Tripwire. (*Id.* ¶¶ 12, 18). In September 2024, Mr. Morris conducted additional negotiations with GMP through messaging services, email, and telephone with GMP employees. (*See id.* ¶ 12).

As part of these discussions from early May 2024 through early September 2024, Mr. Morris represented to GMP that Tripwire could supply the requisite TNT on GMP's strict delivery schedule. (Doc. No. 1 ¶ 18, 22). Mr. Morris knew his representation was false when made. (*Id.* ¶¶ 82, 91). Even so, on September 12, 2024, GMP relied on Mr. Morris' false representation and entered into an agreement with Tripwire. (*Id.* ¶ 22).

Mr. Morris further represented in these discussions with GMP that GMP needed to pay substantial deposits to Tripwire to facilitate the acquisition of the TNT from Tripwire's Vietnamese source. (*Id.* ¶¶ 23–25). Again Mr. Morris knew his representation was false when made, and again GMP relied on Mr. Morris' representation. (*Id.* ¶¶ 82, 91). On September 19, 2024, GMP paid Tripwire a

$2,025,000.00 deposit. (*Id.* ¶ 25). On September 30, 2024, GMP paid Tripwire another $10,125,000.000 deposit. (*Id.* ¶ 75).

Still under the belief that Tripwire could and would supply the requisite TNT, GMP amended the initial agreement to increase the quantity of TNT to be supplied. (*Id.* ¶ 26). The parties entered into the agreement on October 31, 2024. (*Id.*). Mr. Morris signed the agreement. (*Id.* ¶ 27). Under its terms, Tripwire agreed to deliver 20,000,000 kilograms of TNT to GMP over 18 months, and GMP agreed to pay Tripwire $11.00 per kilogram of TNT. (*Id.* ¶¶ 28–29).

Tripwire failed to deliver the first three shipments of TNT to GMP. (*Id.* ¶¶ 42–45). On February 28, 2025, a few days after the third shipment was due, Mr. Morris represented that GMP could send an End User Certificate to Tripwire's subcontractor, and TNT shipments would begin. (*Id.* ¶ 49 ("[S]end an [End User Certificate] direct to Astor [Tripwire's subcontractor] so there is no delay and we can get this moving.")). GMP complied. (*Id.* ¶ 50). On March 11, 2025, Mr. Morris represented that the TNT was ready and GMP should book a ship to transport the TNT from Vietnam. (*Id.* ¶¶ 53–54 ("All documents will be received this week" and "the ship can now be booked.")). GMP booked a ship, which required a $875,222.38 non-refundable deposit. (*Id.* ¶¶ 54–55). Once again, Mr. Morris knew his representations were false when made. (*Id.* ¶¶ 82, 91). Tripwire revealed that the TNT was not ready after the ship arrived in Vietnam, and GMP lost its non-refundable deposit. (*Id.* ¶¶ 56–57).

Despite numerous representations from Mr. Morris that Tripwire would be able to deliver 20,000,000 kilograms of TNT on the strict delivery schedule, GMP never received a single kilogram of TNT.

## III. MEMORANDUM OF LAW

### A. Independent Tort Doctrine Does Not Bar Count I (Fraud) or Count II (Fraud in the Inducement).

Tripwire argues that the Independent Tort Doctrine demands this Court dismiss Count I (Fraud) and Count II (Fraud in the Inducement). Tripwire is wrong. Florida's independent tort doctrine is far narrower than Tripwire implies and generally does not extend to fraud perpetrated to induce a party to enter into a contract. Indeed, the Court need look no further than the cases cited by Tripwire to confirm that fraud claims based on actions that pre-date the contract are not barred by the independent tort doctrine.

The cases cited by Tripwire actually support GMP's position or are, at best, inapposite to the present facts. For example, Tripwire relies on *Bankers Mutual* for the proposition that "[a] cause of action for fraud or fraudulent inducement is barred where the fraud alleged pertains to the *performance* of the contract." (Doc. No. 25 at 2 (quoting *Bankers Mut.*, 784 So. 2d at 488–89)). But *Bankers Mutual* distinguishes between fraud claims pertaining to performance (which are barred) and cases "where the fraud alleged pertains to a term of the contract and is relied upon in inducing the completion of the agreement" (which are not barred). *Bankers Mut.*, 784 So. 2d at 488–89 ("[T]he amended complaint does allege misrepresentations that were made at the time the agreements were entered into

and which induced Bankers Mutual to enter into the agreement. . . . Therefore, the claims for fraud in the inducement are **not barred** by the economic loss rule.”) (emphasis added). Here, GMP alleges that Tripwire made fraudulent statements to coax GMP to enter into the contract that Tripwire later breached:

1. Between May 5, 2024 and May 8, 2024, Mr. Morris represented that Tripwire could supply the requisite TNT to GMP through Tripwire’s Vietnamese source;
2. In early September 2024, Mr. Morris represented through messaging services, email, and telephone conversations with GMP employees that Tripwire could supply the requisite TNT to GMP through Tripwire’s Vietnamese source; and
3. On September 12, 2024, GMP entered into an initial agreement with Tripwire based on Mr. Morris’ fraudulent statements.

(*See* Doc. No. 1 ¶¶ 18, 22, 24). The Complaint’s allegations, which must be taken as true, paint the exact situation that *Bankers Mutual* confirms is not barred by the independent tort doctrine.

Tripwire’s other cited cases similarly support GMP’s argument—and not Tripwire’s. Tripwire cites two other cases to support its independent tort doctrine argument. But those cases stand for the irrelevant proposition that when a party brings both breach of contract and negligence claims related to contract performance, the negligence claims are barred by the independent tort doctrine. (*See* Doc. 25 at 2–3 (citing *BP Homes, LLC v. 84 Lumber Co.*, 384 So. 3d 241, 247

(Fla. 4th DCA 2024) and *Rosenberry v. JPMorgan Chase Bank, N.A.*, 2024 WL 3634951, at *4 (M.D. Fla. May 29, 2024))). In both cases, the plaintiff alleged that the defendant breached the contract by performing some action and committed the tort of negligence by committing the same action. Under those facts, the courts dismissed the tort claims under the independent tort doctrine. But that is not this case.

Tripwire also argues that GMP's Fraud and Fraud in the Inducement claims must fail because GMP seeks the same damages as it does under its breach of contract theory. (*Id*. at 3). But this proves nothing. Matching damages is merely one aspect of the independent tort doctrine—and not its own reason to bar the claim. *See Rosenberry*, 2024 WL 3634951, *4. And, here, the independent tort doctrine does not bar Tripwire's pre-contract tortious actions. *See Bankers Mut.*, 784 So. 2d at 488–89.

For these reasons, the independent tort doctrine does not bar GMP's Count I (Fraud) or Count II (Fraud in the Inducement) and, thus, those claims should not be dismissed. The Court should deny Tripwire's Motion.

### B. GMP's Pled Each Count with Adequate Specificity

Tripwire also argues that the Court should dismiss Count I (Fraud), Count II (Fraud in the Inducement), and Count IV (Unjust Enrichment) under Rule 12(b)(6) for failing to state each claim with sufficient particularity. Tripwire's arguments fail on both the law and the facts.

To properly state a claim, GMP need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To meet this lenient standard, "a complaint need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1341 (M.D. Fla. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fraud claims, however, have a heightened pleading requirement, requiring more specificity. Fed. R. Civ. P. 9(b). But this heightened standard cannot be read "to vitiate the overall concept of notice pleading." *SEC v. Spinosa*, 31 F. Supp. 3d 1371, 1375 (S.D. Fla. 2014); *see also In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 352 (S.D. Fla. 1991).

**1. GMP's Count IV (Unjust Enrichment) Need Not Be Pled with Specificity**

To begin, Tripwire is simply wrong about GMP's Unjust Enrichment count being inadequately pled. GMP pled Count IV (Unjust Enrichment) with sufficient particularity to meet the FRCP's lenient notice pleading standard. Without explanation, Tripwire demands that GMP meet the heightened standard for fraud claims. (Doc. No. 25 at 4–5). But, contrary to Tripwire's unsupported contention, "a claim for unjust enrichment is subject to Rule 9(b) **only** if it is premised on fraud." *Mazzeo v. Nature's Bounty, Inc.*, No. 14–60580–CIV, 2014 WL 5846735, at *1 (S.D. Fla. Nov. 12, 2014) (emphasis added). GMP's Unjust Enrichment claim is not based on fraud, so Tripwire's argument simply does not apply.

To the contrary, GMP's Unjust Enrichment claim is pled as an alternative to the breach of contract claim—unrelated to its fraud counts. (*See* Doc. No. 1 ¶ 105).

GMP's claim makes no reference to Tripwire's or Mr. Morris' fraud, and it forms no basis for this cause of action. (*See generally id.* ¶¶ 105—10). Moreover, GMP's unjust enrichment claim does not depend on proving the retained benefits were obtained by fraud. Instead, to prevail on GMP's Unjust Enrichment claim, GMP need only show that:

- GMP conferred a benefit on Tripwire—$12,150,000. (*Id.* ¶ 106).
- Tripwire accepted and has retained the benefit, despite not delivering any of the promised TNT to GMP. (*Id.* ¶¶ 107–08).
- Tripwire has not provided anything else of comparable value to GMP, and therefore it would be unjust and inequitable for Tripwire to keep GMP's $12,150,000. (*Id.* ¶¶ 109–10).

Accordingly, GMP has adequately pled Count IV (Unjust Enrichment) and the Court should deny Tripwire's motion to dismiss Count IV for lacking specificity that is not required.

**2. GMP Pled Counts I and II with Adequate Specificity**

Tripwire also erroneously argues that GMP's fraud and fraud in the inducement counts lacked sufficient particularity. Although Tripwire is correct that these two counts do need to meet Rule 9(b)'s standard (as opposed to the Unjust Enrichment count), GMP fulfilled that additional obligation. As the cases that Tripwire cites underscore, "[c]ourts should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts."

*Otto Candies*, 137 F.4th at 1178. To meet this balance, plaintiff need only "allege facts regarding the 'time, place, and substance of the defendants' alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Chapman v. Abbott Lab'ys*, 930 F. Supp. 2d 1321, 1324 (M.D. Fla. 2013) (quoting *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012)).

For example, in *Steel Media Group, LLC v. Lewis*, the defendants represented to the plaintiff that they could supply Super Bowl tickets, but failed to provide all of the promised tickets. *Steel Media Group, LLC v. Lewis*, No. 1:22-CV-21780-KING/DAMIAN, 2023 WL 1413043, at *8 (S.D. Fla. Jan. 6, 2023). Consequently, the plaintiff sued the defendants for fraud in the inducement. *Id.* The plaintiff alleged that, on a December 17, 2019 phone call, the defendants made representations about their ability to supply the plaintiff with tickets, even though the defendants had no such connections. *Id.* In evaluating these allegations under Rule 9(b), the court found that the plaintiff sufficiently alleged the requisite "who, what, when, where, and how." *Id.*

Here, GMP alleges its claims sounding in fraud with the same requisite particularity. *See id.*; *Otto Candies*, 137 F.4th at 1178. Like *Steel Media*, GMP's allegations detailed above meet Rule 9(b)'s pleading standards by sufficiently alleging the requisite "who, what, when, where, and how" for Count I (Fraud) and Count II (Fraud in the Inducement).

GMP alleges that Mr. Morris represented to GMP "that Tripwire could supply TNT that met the U.S. military's specifications" on GMP's strict delivery schedule. (Doc. No. 1 ¶¶ 18, 81, 99). GMP also alleges that as part of these discussions "Tripwire [through Mr. Morris] told GMP that by paying these deposits, Tripwire would be able to obtain TNT from a supplier in Vietnam." (*Id.* ¶¶ 24, 81, 99). Mr. Morris either knew these statements were false when made or made them with reckless disregard for their truth. (*Id.* ¶¶ 82–83; 91–92).

GMP also alleges that "[o]n February 28, 2025, Mr. Morris instructed GMP to 'send an [End User Certificate] direct to Astor [Tripwire's subcontractor] so there is no delay and we can get this moving.'" (*Id.* ¶ 49). GMP further alleges that "[o]n March 11, 2025, Mr. Morris told GMP that '[a]ll documents will be received this week' and that 'the ship can now be booked." (*Id.* ¶ 53). GMP also alleges that in reliance on Mr. Morris' misrepresentations, Plaintiff "booked a vessel to transport TNT from Vietnam," but "[a]fter the vessel arrived in Vietnam at the agreed upon time, Tripwire revealed that the shipment of TNT was not ready and would not be ready for another 45-60 days." (*Id.* ¶¶ 54, 56). Nothing more is required, and the Complaint adequately alleges the requisite "who, what, when, where, and how" to satisfy Rule 9(b).

For these reasons, the Court should deny Tripwire's motion to dismiss Counts I, II, and IV for lacking particularity.

## IV. CONCLUSION

The Court should deny Tripwire South's Motion to Dismiss, find that the Independent Tort doctrine does not apply, and confirm that GMP's Complaint meets the Federal Rules of Civil Procedure's minimum pleading standards.

Respectfully submitted this 26th day of November, 2025.

*/s/ Michael S. Vitale*
Michael S. Vitale
Florida Bar No. 17136
Email: mvitale@bakerlaw.com
Secondary email:
ybayala@bakerlaw.com
orlbakerdocket@bakerlaw.com
Daniel D. Woodruff
Florida Bar No. 1059872
Email: dwoodruff@bakerlaw.com
Secondary email:
lshahsailes@bakerlaw.com
orlbakerdocket@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168

Kevin T. Barnett
(admitted pro hac vice)
Email: kbarnett@bakerlaw.com
Kevin Dorn
(admitted pro hac vice)
Email: kdorn@bakerlaw.com
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
Telephone: 202.861.1500

Jenna Solari
(admitted pro hac vice)

Email: jsolari@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309-7676
Telephone: 404.682.2333

*Attorneys for Global Military Products, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Michael S. Vitale*
Michael S. Vitale