**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GLOBAL MILITARY PRODUCTS, INC.

Plaintiff,

vs. Case No. 8:25-cv-02731-JLB-CPT

TRIPWIRE SOUTH LLC, RYAN MORRIS, and CONAN HIGGINS,

Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CONAN HIGGINS' MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Plaintiff, Global Military Products ("GMP") hereby files this Memorandum of Law in Opposition to Defendant, Conan Higgins' Motion to Dismiss the Complaint ("Motion"). As alleged in GMP's Amended Complaint (Doc. No. 39), Higgins' tortious conduct and fraudulent statements directed at a company in Florida—while serving as the general counsel of a Florida-based company—provides the necessary minimum contacts to establish personal jurisdiction.

## I. INTRODUCTION

In its Amended Complaint, GMP detailed how Conan Higgins ("Higgins") committed intentional torts directed at a company that Higgins knew was located in Florida—GMP. Even worse, the Amended Complaint shows that at the time Higgins committed these intentional torts, he was GMP's in-house counsel. In that role, Higgins frequently visited Florida and communicated with GMP employees

in Florida nearly every single day. Higgins used his role as the general counsel of a Florida company to direct communications at Florida residents that fraudulently induced that Florida company to enter a contract that Higgins knew would not be completed according to its terms. He admits traveling to Florida. Despite all of these contacts, Higgins claims that he lacks sufficient ties to Florida that he could not have expected to be haled into court in Florida. That position is frivolous.

Higgins obfuscates his role as GMP's lawyer and instead tries to argue that the Court lacks personal jurisdiction because Florida's long-arm statute does not extend to him as a non-resident with only passing ties to the state. Beyond ignoring the ethical and fiduciary duties he owed to a Florida company, Higgins' arguments also ignore long-standing Florida precedent that Florida's long-arm statute extends to a non-resident defendant alleged to have made fraudulent misrepresentations directed into Florida. *See, e.g., Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002).

Higgins' argument that due process would be offended by a Florida court having jurisdiction over his actions is similarly misplaced. Higgins' argument sidesteps all of the cases that confirm commission of an intentional tort alone can provide sufficient minimum contacts to convey personal jurisdiction. *See, e.g.*, *Exhibit Icons, LLC v. XP Comps., LLC*, 609 F. Supp. 2d 1282, 1298 (S.D. Fla. 2009).

## II. RELEVANT FACTUAL ALLEGATIONS

In 2024, GMP's parent company—Global Ordnance—hired Conan Higgins

to serve as General Counsel. (Doc. No. 39 ¶ 31). Global Ordnance is based in Sarasota, Florida. (**Ex. A**, Declaration of Jeffrey Brunozzi ("Brunozzi Dec.") ¶ 3). As part of his duties, Higgins also served as the attorney for GMP. (Doc. No. 39 ¶ 32; Brunozzi Dec. ¶ 5). GMP's principal place of business is in Tampa, Florida. (Doc. No. 39 ¶¶ 10, 19). Indeed, Higgins' offer of employment stated that his work location was a hybrid position reporting to the office located at 2701 North Rocky Point Drive, Suite 980, Tampa, Florida. (Brunozzi Dec. ¶ 6).

Later that year, GMP sought out potential suppliers to provide TNT in accordance with certain military specifications. (Doc. No. 39 ¶¶ 1, 24, 46, 55). To this end, Higgins suggested to GMP that Tripwire could provide GMP with the needed TNT. (*Id.* ¶ 39; Brunozzi Dec. ¶ 10). Following Higgins' recommendations, GMP engaged in discussions with Morris—the founder and President of Tripwire. (Doc. No. 39 ¶¶ 1, 16, 24, 25, 42–44; Brunozzi Dec. ¶¶ 10–12).

In May 2024, Higgins traveled to Florida and participated in discussions about supplying TNT with other GMP representatives including Bill Allen and Jeff Brunozzi. (Doc. 39 ¶¶ 42–45; Brunozzi Dec. ¶ 12). These discussions included a number of different topics, including a possible agreement for Tripwire to supply TNT to GMP. (Brunozzi Dec. ¶ 12–13).

From May 2024 through September 2024, GMP and Tripwire conducted additional negotiations. (*See* Doc. No. 39 ¶ 46). As part of these negotiations, Mr. Higgins made representations to GMP, supporting Tripwire's claim that Tripwire would be able to deliver TNT to GMP, including representations that Tripwire was

a reliable and trustworthy partner; Tripwire could deliver 20,000,000 kg of TNT; Tripwire could meet the delivery schedule in the Contract; and Tripwire would abide by GMP's Conduct of Conduct, which prohibited kickbacks. (*Id.* ¶¶ 164–66, 174–76; Brunozzi Dec. ¶¶ 13–16). Higgins also advised GMP that it should proceed with Tripwire's proposal without revealing that Mr. Higgins would receive a $700,000 commission from Tripwire. (Doc. No. 39 ¶¶ 58, 165, 175; Brunozzi Dec. ¶ 17). In fact, Higgins concurred with GMP paying these deposits and, as GMP's own lawyer, did not object to GMP paying these deposits. (Doc. No. 39 ¶ 56).

During that period, Higgins—as general counsel—continued to advise GMP to enter the agreement with Tripwire. (Brunozzi Dec. ¶ 13). Higgins provided this advice during his many visits to GMP's Tampa offices and through email and telephone conversations directed at GMP employees located in Florida. (*Id.* ¶¶ 12–13, 15, 17).

On September 12, 2024, GMP relied in part on Higgins' false representations and entered into an agreement with Tripwire. (Doc. No. 39 ¶¶ 46, 169, 179; Brunozzi Dec. ¶ 16). Still under the belief that Tripwire could supply the requisite TNT, GMP amended the initial agreement to increase the quantity of TNT. (Doc. No. 39 ¶ 73). Higgins advised GMP on the amended agreement. (Brunozzi Dec. ¶ 21). Under its terms, Tripwire agreed to deliver 20,000,000 kilograms of TNT to GMP over 18 months, and GMP agreed to pay Tripwire $11 per kilogram of TNT. (Doc. No. 39 ¶¶ 75–76). GMP also agreed to make another deposit equal to 15% of the first 6,000,000 kilograms of TNT within 30 days. (*Id.* ¶ 51).

Tripwire failed to deliver the first five shipments of TNT to GMP. (*Id.* ¶¶ 94–99). In the end, despite numerous representations from Higgins that Tripwire would be able to deliver 20,000,000 kilograms of TNT on the strict delivery schedule, GMP never received a single kilogram of TNT, and still has not to this date. (*See id.* 94–99, 125–27, 193; Brunozzi Dec. ¶¶ 22–23). Mr. Higgins, however, received $700,000 of GMP's funds from Tripwire for encouraging and assisting GMP to consummate the deal. (Brunozzi Dec. ¶ 17).

## III. MEMORANDUM OF LAW

### A. The Court Should Deny Higgins' Motion to Dismiss for Failing to Meet and Confer Before Filing

Rule 3.01 of the Local Rules of U.S. District Court for the Middle District of Florida imposes a duty on all movants to "confer with the opposing party in a good faith effort to resolve the motion" "[b]efore filing a motion in a civil action." Local R. 3.01(g)(1). In addition, the same rule demands that the movant certify compliance with the meet and confer requirement. *See* Local R. 3.01(g)(2) ("At the end of the motion and under the heading 'Local Rule 3.01(g) Certificate,' the movant: (A) must certify that the movant has conferred with the opposing party, (B) must state whether the parties agree on the resolution of all or part of the motion, and (C) if the motion is opposed, must explain the means by which the conference occurred."). "The importance of Local Rule 3.01(g) cannot be overstated." *Craig v. Target Corp.*, No. 2:23-cv-599-JLB-KCD, 2023 WL 11257275, at *1 (M.D. Fla. Dec. 4, 2023) (internal quotation omitted).

This Court has repeatedly held that overlooking Rule 3.01(g)'s meet-and-

confer requirement warrants denial of the motion. *See, e.g.*, *Phillips v. Cario*, No. 5:26-CV-9-PGB-PRL, 2026 WL 507939, at *1 (M.D. Fla. Feb. 24, 2026) (denying a motion to dismiss because "[a] violation of Local Rule 3.01(g) 'constitutes sufficient grounds to deny the relief sought by the noncompliant moving party.'") (quoting *Esrick v. Mitchell*, No. 5:08-cv-50-OC-10GRJ, 2008 WL 5111246, at *1 (M.D. Fla. Dec. 3, 2008)); *see also Parker v. Parker*, 829 F. App'x 389 (11th Cir. 2020) (affirming that failure to comply with M.D. Fla. L.R. 3.01(g) precluded granting underlying motion).

Here, Higgins' Motion to Dismiss does not comply with Rule 3.01(g)'s meet and confer requirements. (*See generally*, Doc. No. 50). Higgins never conferred before filing his motion, which in turn, means that Higgins could not (and did not) include the required certification with his motion. (*See generally* Doc. 50 at 1–7 (omitting Rule 3.01(g) certification). This significant oversight "constitutes sufficient grounds to deny" Higgins' Motion to Dismiss. *Phillips*, 2026 WL 507939, at *1. The Court should deny the Motion for this reason.

**B. This Court has Personal Jurisdiction Over Higgins.**

**1. Legal Standard**

The plaintiff has the initial burden to show a prima facie case of personal jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). If the defendant submits affidavits contradicting plaintiff's allegations, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only

conclusory assertions against jurisdiction. *Id.* Where the complaint and supporting affidavits and documents conflict with the Defendants' affidavits, the Court must construe all reasonable inferences in the plaintiff's favor. *Id.*

### 2. GMP Pleaded Sufficient Facts to Establish Personal Jurisdiction.

This Court has personal jurisdiction over Higgins. To assess personal jurisdiction, the Court must conduct a two-step analysis. *See, e.g.*, *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the Court determines whether the complaint alleges sufficient facts to bring the defendant within the reach of Florida's long-arm statute. *Id.* Second, the Court asks whether plaintiff's assertion of jurisdiction comports with due process and traditional notions of fair play and substantial justice. *Id.* GMP's Amended Complaint satisfies both steps.

First, GMP has pled sufficient facts to show that Higgins' conduct subjects him to Florida's long-arm statute. Florida's long-arm statute extends this Court's personal jurisdiction over non-resident defendants that have committed a tortious act within the state. Fla. Stat. § 48.193(1)(a)(2). Courts have consistently interpreted this statute to encompass fraudulent acts committed outside the state but directed at individuals or companies within Florida. *See, e.g.*, *Exhibit Icons*, 609 F. Supp. 2d at 1297 ("Fraud in the inducement and negligent misrepresentation are torts that can establish personal jurisdiction."); *see also Wendt*, 822 So. 2d at 1260 (finding long-arm jurisdiction over out-of-state defendant alleged to have made "telephonic, electronic, or written communications into Florida" and the cause of action arose from those

communications); *Machtinger v. Inertial Airline Servs., Inc.*, 937 So.2d 730, 735 (Fla. 3d DCA 2006) (fraudulent misrepresentations made outside Florida and directed into Florida by phone, fax, and writings constitute tortious acts committed within Florida under Florida's long-arm statute).

The same logic applies here. As alleged in GMP's Complaint, Higgins made false representations to GMP regarding Tripwire's ability to deliver the quantities of TNT that GMP needed; the need for substantial downpayments; and the need for transportation for imminent deliveries. (*See* Doc. No. 39 ¶¶ 25, 39, 54–56, 104, 108, 164, 168, 170, 174, 178, 180). In other words, Higgins directed fraudulent statements into Florida—the same conduct that triggered the Florida long-arm statute in *Exhibit Icons* and *Wendt*. And just as in *Exhibit Icons* and *Wendt*, this Court should find that the same Florida long-arm statute encompasses Higgins' tortious actions.

Higgins' Motion largely rests on a flawed reading of the Amended Complaint. Higgins does not deny that the Amended Complaint alleged tortious conduct; instead, he argues that "GMP, however, makes no allegation that any supposed representation, whether fraudulent or otherwise, was perpetrated by Higgins in or directed toward Florida." (Doc. No. 50 at 3). But this position ignores the elephant in the room: Higgins made these representations and helped fraudulently induce GMP into entering the contract with Tripwire while he was Florida-based GMP's attorney and every fraudulent representation and conversation with GMP was a tortious act directed at a Florida resident. GMP's

Amended Complaint makes repeated allegations to that effect. (Doc. No. 39 ¶¶ 25, 31–32, 39, 46, 56, 58, 73, 164-66, 169, 174-76, 179; *see also* Brunozzi Dec. ¶¶ 4–5, 10–12, 15–17). Nothing more is required. *Exhibit Icons*, 609 F. Supp. 2d at 1297; *Wendt*, 822 So. 2d at 1260; *Machtinger*, 937 So.2d 730 at 735.

Second, exercising personal jurisdiction comports with the requirements of due process and notions of fair play and substantial justice. This second step requires its own analysis to determine whether (1) the defendant has sufficient "minimum contacts" with Florida, and (2) exercising jurisdiction offends notions of fair play and substantial justice. *Sculptchair*, 94 F.3d at 626. Higgins committing an intentional tort aimed at a Florida resident (GMP), his employer, to whom he owed ethical and fiduciary duties as the Florida company's lawyer, satisfies both prongs.

To establish minimum contacts, the Court must consider whether the defendant's contacts with Florida relate to the plaintiff's cause of action, involve some purposeful availment of the privilege of conducting activities within the forum, and are such that he should reasonably anticipate being haled into court there. *Id.* at 631. The "minimum contacts" requirement "is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum state, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). "When an intentional tort is alleged, personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum." *Exhibit Icons*, 609



133324.000010\4935-4812-3299.2

F. Supp. 2d at 1298 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)); *see also Licciardello*, 544 F.3d at 1286–88 (explaining that the "effects" test provides for the exercise of personal jurisdiction over non-resident defendants who commit an intentional tort aimed at the forum state that causes foreseeable harm in the forum state). Higgins' alleged conduct falls within this rubric: GMP alleged he committed multiple intentional torts (fraud and fraud in the inducement) aimed at the forum state (a company headquartered in Florida) that caused harm to that company. (Doc. No. 39 ¶¶ 10, 19, 41, 163–72, 173–82, 207–17). GMP also alleges that some of the fraudulent statements were made while Higgins traveled to Florida. (*See, e.g.*, *id.* ¶¶ 42–44). Thus, the minimum contacts requirement is satisfied.

To determine whether jurisdiction would offend the notion of fairness, the Court must assess "the burden on the defendant, the interests of the forum . . . , and the plaintiff's interest in obtaining relief." *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

Having established a prima facia case for jurisdiction, the burden shifts to Higgins to offer evidence that jurisdiction is improper. Higgins has failed to carry his burden with affidavits or evidence that offers anything except "conclusory assertions" against exercising jurisdiction. *Stubbs*, 447 F.3d at 1360. For example, to counter GMP's allegations that Higgins made fraudulent misrepresentations to GMP, which amounted to fraud and fraud in the inducement, (*see* Doc. No. 39 ¶¶ 46, 56, 58, 73, 164-66, 169, 174–76, 179), Higgins makes a series of boilerplate denials that include:

- In connection with the actions alleged in the Amended Complaint, I did not perform any acts or make any communications directed toward any Florida residents.
- I have not committed any tortious act in Florida, nor have I directed any conduct toward any Florida resident that would subject me personally to the jurisdiction of the Florida courts.
- I have not purposefully availed myself of the privilege of jurisdiction within Florida and could not reasonably anticipate being required to defend any personal action in Florida.

(Doc. No. 50 at 9-10, ¶¶ 6–8). These are the classic "conclusory assertions" that the Court need not accept. *See Stubbs*, 447 F.3d at 1360.

Beyond their conclusory nature, Higgins' statements still fall short of carrying his burden. Despite concluding that he engaged in no tortious conduct, Higgins does not deny engaging in the underlying conduct that GMP asserts constituted tortious behavior—just a generic denial that he committed any tortious conduct or that any such tortious act was committed in Florida or directed toward any Florida resident. These qualified denials differ from other defendants' affidavits that have successfully led to dismissals for lack of personal jurisdiction. In *White*, the defendants rebutted each allegation tying them to intentional torts:

> Similarly, the three corporate officers stated under oath in their affidavits that they had no role in broadcasting, distributing, or licensing the episode at issue and none of them had any contacts such as work, residence, business ownership, property, or financial accounts in Florida. These defendants' affidavits supported their arguments in the motions to dismiss that they did not publish the episode and thus did not commit the tort of defamation in Florida.

*White v. Discovery Commc'ns, LLC*, 365 So. 3d 379, 383 (Fla. 1st DCA 2023). In contrast, Higgins' affidavit admits to the underlying acts that GMP alleges

constitute intentional torts. (*See* Doc. No. 45-1 ¶¶ 11, 13, 19–20, 28–29, 41). This includes, specifically, traveling to Florida and attending meetings with Tripwire in connection with his role as an employee of GMP. (Doc. No. 50, p. 9, ¶¶ 9, 11).

Even if the Court accepts Higgins' statements as sufficient to carry his burden, which they are not, Higgins' Motion must still be denied. GMP has offered a competing sworn statement, attached as Exhibit A, revealing Higgins' many connections with Florida, confirming Higgins' tortious actions raised in the Amended Complaint, and otherwise contradicting much of Higgins' affidavit.

In Dr. Brunozzi's declaration, he confirms:

- Higgins suggested to GMP that Tripwire could provide GMP with the needed TNT.
- In May 2024, Higgins traveled to Florida and participated in discussions about supplying TNT . . . . These discussions included . . . a possible agreement for Tripwire to supply TNT to GMP.
- Higgins advised GMP on the agreement, but never disclosed that he would receive a $700,000 payment from Mr. Morris if GMP entered into the agreement.
- Higgins advised GMP on the amended agreement.

(Brunozzi Dec. ¶¶ 10, 12, 17, 21).

Given the conflicting sworn statements and evidence that GMP has brought forward in response, the Court should find that GMP has met its burden. At best, Higgins' statements create a direct conflict between GMP's allegations and sworn statements that Higgins visited Florida in his capacity as GMP's lawyer, and committed intentional torts directed at that same Florida company whom Higgins'

represented and Higgins' boilerplate statements that he did not. In such situation, the Court "must construe all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360. For these reasons, the Court should find that GMP has adequately alleged personal jurisdiction.

## IV. CONCLUSION

The Court should deny Higgins' Motion and find that the Court has personal jurisdiction over Higgins.

Respectfully submitted this 20th day of April, 2026.


*/s/Michael S. Vitale*
Michael S. Vitale
Florida Bar No. 17136
Email: mvitale@bakerlaw.com
Secondary: ybayala@bakerlaw.com
orlbakerdocket@bakerlaw.com
Daniel D. Woodruff
Florida Bar No. 1059872
Email: dwoodruff@bakerlaw.com
Secondary: lshahsailes@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168

Kevin T. Barnett
(admitted pro hac vice)
Email: kbarnett@bakerlaw.com
Kevin Dorn
(admitted pro hac vice)
Email: kdorn@bakerlaw.com
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
Telephone: 202.861.1500

Jenna Solari
(admitted pro hac vice)
Email: jsolari@bakerlaw.com
**BAKER & HOSTETLER LLP**
1170 Peachtree Street, Suite 2400
Atlanta, GA 30309-7676
Telephone: 404.682.2333

*Attorneys for Global Military Products, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/Michael S. Vitale*
Michael S. Vitale