UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GLOBAL MILITARY PRODUCTS,
INC.,

       Plaintiff,

v.                                         Case No:   8:25-cv-02731-JLB-CPT

TRIPWIRE SOUTH, LCC, RYAN
MORRIS, and CONAN HIGGINS,

       Defendants.

_____/

## <u>ORDER</u>

Before the Court is Defendant Tripwire South, LCC's ("Tripwire") motion for a preliminary injunction to prevent Plaintiff Global Military Products, Inc. ("GMP") from using Tripwire's federal explosives licenses, permits, registrations, and identifying numbers (Doc. 44).  GMP sued Tripwire for breach of contract and other claims arising from a failed sale of trinitrotoluene ("TNT"), and Tripwire counterclaimed.  (Docs. 39, 42).  Tripwire now moves for a preliminary injunction based on its Lanham Act and Florida law unfair competition claims.  (Doc. 44).  After careful review, Tripwire's Motion for Preliminary Injunction is **DENIED**.

## BACKGROUND[1]

This case arises from a failed sale of TNT.  (Doc. 42 at ¶¶ 6–7, 11).  In September 2024, GMP agreed to purchase TNT from Tripwire, but Tripwire alleges that GMP failed to perform its obligations under the contract.  (*Id.* at ¶¶ 7–11).  Accordingly, Tripwire also refused to perform.  (*Id.* at 11).

Tripwire claims that GMP then contacted Tripwire's vendor in Vietnam and falsely claimed that Tripwire was in default.  (*Id.* at ¶¶ 11, 13).  GMP also "misused Tripwire's regulatory credentials, by illegally handling and repackaging (directly or indirectly) explosive materials under Tripwire's federal authorization numbers, without Tripwire's knowledge or consent."  (*Id.* at ¶ 20).  Tripwire learned of this behavior when a logistics provider informed Tripwire at a conference that it was repacking "Tripwire's TNT" because GMP provided it with an explosives approval number ("EX Number") from the United States Department of Transportation's Pipeline and Hazardous Materials Safety Administration ("PHMSA") that listed Tripwire as the associated entity.  (*Id.* at ¶¶ 21–22; Doc. 44-1 at ¶ 11).

---

[1] In ruling on a motion for preliminary injunction, a court may take the movant's well-pleaded factual allegations as true.  *See Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).  Nevertheless, the movant generally must provide evidence to show it is entitled to preliminary injunctive relief.  *See Church of Scientology Flag Servs. Org., Inc. v. City of Clearwater*, 777 F.2d 598, 608 (11th Cir. 1985).  Naked allegations will not suffice.  *See id.*  Moreover, a court may consider any affidavits and hearsay materials provided by the parties that are "appropriate given the character and objectives of the injunctive proceeding."  *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).  Accordingly, the Court takes the background facts alleged in Defendant Tripwire's Counterclaim as true (Doc. 42 at 18–30) and considers the evidence provided by the parties alongside their briefs (Docs. 44, 53).

Tripwire immediately reported this incident to the PHMSA. (Doc. 42 at ¶ 25; Doc. 44-1 at ¶ 15). At the same time, Tripwire learned that a shipment of TNT had been delivered to Long Beach, California, from Vietnam and consigned to Global Ordnance Holdings, LLC ("Global Ordnance"), which is GMP's parent company. (Doc. 44-1 at ¶ 17; Doc. 53-1 at ¶ 1; Doc. 44-3). At no time did Tripwire authorize GMP to use its federal explosives authorizations. (Doc. 44-1 at ¶¶ 6–7).

After Tripwire filed its motion for preliminary injunction, GMP filed a response. (Doc. 53). GMP's response included an affidavit from Dr. Jefferey Brunozzi, the President of Global Ordnance. (Doc. 53-1). Dr. Brunozzi's affidavit confirms that Global Ordnance imported TNT from a manufacturer in Vietnam. (*Id.* at ¶ 4). This manufacturer previously worked with Tripwire to have PHMSA approve the manufacturer's TNT formulation and issue an EX Number. (*Id.* at ¶¶ 4–5). According to Dr. Brunozzi, the EX Number is not associated with Tripwire. (*Id.* at ¶ 6). Instead, EX Numbers merely identify that a manufacturer's specific formulation of explosives is safe to ship in commerce. (*Id.* at ¶¶ 5–6). Therefore, Dr. Brunozzi concedes that GMP used the EX Number in conjunction with its own ATF-issued Federal Explosives License to transport the TNT. (*Id.* at ¶ 7).

Dr. Brunozzi cites an encounter with PHMSA in support of GMP's actions. (*Id.* at ¶¶ 10–13). He claims that a PHMSA agent visited GMP's facilities to investigate Tripwire's report, and the agent confirmed GMP's understanding of EX Numbers. (*Id.* at ¶ 10–12). The PHMSA agent found no issue with GMP's conduct

and indicated that the PHMSA could issue a new EX Number in the future to avoid any reference to Tripwire.  (*Id.* at ¶¶ 11–13).

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)) (cleaned up).  A movant must show that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  *Id.* (quoting *McDonald's Corp.*, 147 F.3d at 1306).  Whether to grant or deny a preliminary injunction is "within the sound discretion of the district court . . . ."  *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (citations omitted).

## DISCUSSION

Tripwire's motion for preliminary injunction (Doc. 44) is denied because Tripwire has failed to demonstrate a likelihood of success on the merits of its Lanham Act and Florida unfair competition claims, and Tripwire has not clearly established that irreparable harm would result absent an injunction.

Regarding Tripwire's likelihood of success on the merits, Tripwire first claims that GMP violated the Lanham Act by misusing Tripwire's federal explosives

authorizations and the EX Number that Tripwire helped to acquire. (Doc. 44 at 2–3). To prevail under Section 43(a) of the Lanham Act, "a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001). To establish prior rights, a claimant must show "first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark . . . ." *Id.* at 1195 (quoting *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 418 (1st Cir. 1951)). Adoption is determined based on the totality of the circumstances. *Id.* (citing *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999), *cert. denied*, 528 U.S. 1188 (2000)).

Here, Tripwire has not clearly established that it is likely to succeed on the merits of its Lanham Act claim because Tripwire has provided insufficient evidence that it had prior rights in the federal explosive authorizations it references. Aside from the EX Number, Tripwire does not identify or provide evidence that GMP misused any of Tripwire's particular federal explosives authorization. A preliminary injunction cannot be granted on the basis of such naked allegations. *See Church of Scientology Flag Servs. Org., Inc.*, 777 F.2d at 608. However, even regarding GMP's use of the EX Number, Tripwire has failed to meet its burden to show that an EX Number is a "word, term, name, symbol, or device" associated with

5

Tripwire in the public mind or that Tripwire had prior rights to the EX Number.  15 U.S.C. § 1125; *see Planetary Motion, Inc.*, 261 F.3d at 1195.  Instead, the evidence provided by GMP indicates that an EX Number identifies a specific manufacturer of an explosive or that manufacturer's modification of an explosive.  And the federal regulation governing the issuance of EX Numbers supports this reading.  *See* 49 C.F.R. § 173.56(a).  The regulation states that something is a "new explosive," which may be issued an EX Number, when it is "produced by a person who . . . [h]as not previously produced that explosive; or . . . [h]as previously produced that explosive but has made a change in the formulation, design, or process so as to alter any of the properties of the explosive."  49 C.F.R. § 173.56(a).  Nowhere in this regulation does it state that the transporter of an explosive may be issued a *separate* EX Number for its own use.  To the contrary, the regulation provides that "[a]n explosive will not be considered a 'new explosive'" if it is not significantly different from an explosive that has been approved previously.  49 C.F.R. § 173.56(a)(2).  This indicates that GMP would have been unable to acquire its own EX Number to purchase TNT from the same manufacturer.  Accordingly, Tripwire has failed to meet its burden to show that it is likely to succeed on the merits of its Lanham Act claim.

Tripwire's Florida unfair competition claim fails to justify a preliminary injunction for the same reason.  Under Florida law, the analysis of an unfair competition claim is identical to the analysis for a Lanham Act trademark-infringement claim.  *Custom Mfg. & Engineering, Inc. Midway Servs., Inc.*, 508 F.3d

641, 652–53 (11th Cir. 2007) (citations omitted).  Accordingly, Tripwire has failed to show that it is likely to succeed on the merits of its Florida unfair competition claim for the same reasons the Court has just discussed.

Beyond Tripwire's failure to demonstrate a likelihood of success on the merits, it has also failed to demonstrate that it would suffer irreparable harm absent a preliminary injunction.  Tripwire argues that GMP's actions subject Tripwire to regulatory exposure from the PHMSA and that GMP's use of the EX Number may damage Tripwire's reputation within the explosives industry.  (Doc. 44 at 9–13).  Neither of these arguments is convincing.  First, the evidence before the Court does not show that the PHMSA is likely to take any adverse regulatory actions against Tripwire because of GMP's actions.  (*See* Doc. 53-1).  Instead, it appears on this record that the PHMSA investigated Tripwire's report and was satisfied after visiting GMP's facilities.  (*Id.* at ¶¶ 10–13).  Any further inference of regulatory action would be speculative at this time.  Regarding Tripwire's second argument, there is no evidence in the record to suggest that Tripwire's reputation within the industry would be irreparably harmed by GMP's continued use of the EX Number.  As the Court has discussed, Tripwire fails to show that it has any prior right to the use of the EX Number, and the evidence that Tripwire has presented merely demonstrates that one logistics provider was confused about Tripwire's dealings.  (Doc. 44-1 at 8–13).  This evidence falls short of clearly establishing that Tripwire would be irreparably harmed by GMP's continued use of the EX Number.

7

Accordingly, Tripwire's Motion for Preliminary Injunction (Doc. 44) is **DENIED**.

**ORDERED** in Tampa, Florida, on May 7, 2026.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

8